```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------
NICKIE KANE,

                    Plaintiff,           MEMORANDUM & ORDER
                                         22-CV-1339 (KAM)(LB)
          v.
CITY OF NEW YORK; NEW YORK POLICE
DEPARTMENT; SARGENT PUMELLA;
OFFICER JOHN DOE; OFFICER JANE
DOE,

Defendants.
-------------------------------------
```
KIYO A. MATSUMOTO, United States District Judge:

On March 1, 2022, *pro se* Plaintiff filed the instant action[1] alleging violations of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and violations of the Fourteenth Amendment's Equal Protection Clause based on an encounter with police during a July 17, 2020 incident on a bus in Queens, New York.[2] (ECF No. 1, Complaint ("Compl.").  She named as defendants (1) the City of New York; (2) the New York City Police Department ("NYPD"); (3) Sergeant Pumella; and (4) Officers John and Jane Doe (collectively "Defendants").  Plaintiff moved to proceed *in forma pauperis*.  (ECF No. 6.)  For the reasons set forth

---

[1] Plaintiff brought the action in the United States District Court for the Southern District of New York, which subsequently transferred the case to this Court.  (ECF Nos. 1, 2.)

[2] Because "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," the Court liberally construes Plaintiff's Fourteenth Amendment claim as arising under 42 U.S.C. § 1983.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted).

below, and pursuant to 28 U.S.C. § 1915, Plaintiff's request to proceed *in forma pauperis* is GRANTED, the complaint is DISMISSED for failure to state a claim, and Plaintiff is GRANTED 30 days leave from the date of this Order to file an amended complaint regarding her ADA claim.

## BACKGROUND

The following facts are drawn from the complaint and assumed to be true for the purposes of this Memorandum and Order. *See Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir. 2010) (explaining that at the pleading stage, a court must assume "all well-pleaded, nonconclusory factual allegations in the complaint to be true").

Plaintiff alleges that on July 17, 2020, she boarded a bus with a service dog. (Compl. at 7.) The service dog helps with her "PTSD with depression and anxiety": it "wakes her up in the morning, reminds her to take her medication, diverts her attention when she is experiencing a panic attack and barks at individuals who trigger" her. (*Id.*) After boarding, the bus driver repeatedly told Plaintiff to leave the bus, due to her service dog, despite her assertions that the law permitted her to travel on the bus with the animal. (*Id.*) When Plaintiff refused to leave, the driver parked the bus and refused to continue driving. (*Id.*) Plaintiff called the police, and NYPD Officers Jane and John Doe responded. (*Id.*) Officer John Doe "instructed [Plaintiff] that she was not allowed to board the bus with her dog." (*Id.*) After the incident, Plaintiff filed a claim with the New York City Comptroller.

2

(*Id.*)   Plaintiff alleges that a 50-h hearing was held on August 26, 2021, but does not allege any further information regarding the hearing or its outcome.   (*Id.*)

Additionally, Plaintiff alleges that she was harassed by a passenger on the bus, who "began complaining" when the bus was stopped and who made an offensive comment regarding Plaintiff's gender expression. (*Id.* at 8.)   The passenger also allegedly "slammed into [Plaintiff] and her dog with a shopping cart" after all passengers— including Plaintiff—disembarked from the parked bus.   (*Id.*)   Officers John and Jane Doe recorded a statement from Plaintiff regarding this incident.   (*Id.*)   When Plaintiff later contacted the NYPD to "inquire about the status" of her police report, she realized that the report filed by Officers John and Jane Doe "did not state an assault had occurred."   (*Id.*)   To correct the allegedly deficient police report, Plaintiff went to a police station, where Sergeant Pumella took her statement regarding the bus passenger.   (*Id.*)   After "time passed" without contact from the NYPD, Plaintiff received a copy of the amended report and realized that it "still did not accurately reflect that an assault had occurred."   (*Id.*)   She alleges that the NYPD's failure to "accurately record the crime" contrasts with their response to the "many attacks on the Asian community" that were reported during "the pandemic of 2020," wherein "[a]ssailants often made comments as to the race/ethnicity of the victim prior to the assault" and where the

3

"assaults were classified as hate crimes and referred . . . for prosecution." (Compl. at 8-9.)

Plaintiff asserts that Officers John and Jane Doe violated the ADA, causing her emotional distress, and that the City of New York failed to adequately train Officers John and Jane Doe. (*Id.*) She also asserts that Defendants violated the Fourteenth Amendment's Equal Protection Clause by failing (1) to "accurately record the crime" committed against her by the bus passenger; and (2) to "investigate and refer the crime for prosecution as a hate crime," based on her sex. (*Id.* at 2, 8.) She requests as relief damages, the amendment of the police report, an investigation by the NYPD, and referral of the assault for prosecution. (*Id.* at 9.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), this Court must dismiss an *in forma pauperis* action if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." The submissions of a *pro se* plaintiff are "held to less stringent standards" than those drafted by attorneys, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted), and "construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)

4

(per curiam) (citation and internal quotation marks omitted). "This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Even so, to survive a motion to dismiss, a complaint must plead enough facts, "accepted as true, to state a claim to relief that is plausible on its face." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Detailed factual allegations are not required, but a pleading that tenders "naked assertion[s] devoid of further factual enhancement" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. (citations and internal quotation marks omitted).

## DISCUSSION

### I.   Defendant NYPD

As an agency of the City of New York, the NYPD cannot be joined as a party to this suit. N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("The district court

correctly noted that the NYPD is a non-suable agency of the City.") (citation omitted). Accordingly, the Court dismisses Plaintiff's claims against the NYPD.

## II. § 1983 Claims

A colorable Section 1983 claim requires two elements: (1) the conduct challenged "must have been committed by a person acting under color of state law," *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citation omitted); and (2) the conduct complained of "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.* (citation omitted).

Plaintiff fails to state a claim against Defendants Officer John Doe, Officer Jane Doe, and Sergeant Pumello. Although Plaintiff's factual allegations likely establish that all three defendants were acting under color of law, *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("We have no doubt that when an officer identifies himself as a police officer . . . he acts under color of law."), Plaintiff fails to establish that their actions deprived her of a constitutional right. Plaintiff asserts that by failing to include her allegation of an "assault" committed by the bus passenger in their report, Officers John and Jane Doe and Sergeant Pumello violated the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *White v. City of New York*, 206 F. Supp. 3d 920, 930

(S.D.N.Y. 2016) (quoting *City of Cleburne v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff alleges in her complaint that she was "not granted equal protection as similarly situated individuals due to her sex," thus asserting a selective enforcement claim. (Compl. at 9.); *see Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (analyzing selective enforcement claim where plaintiff alleged local ordinance was not enforced against similarly situated individuals). When alleging selective enforcement claims, a plaintiff must plausibly allege that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations . . . to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted).

Plaintiff has not plausibly alleged facts establishing that others were similarly situated to Plaintiff. *Cf. Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009) ("Any equal protection claim is grounded on a comparison between the treatment the state gives similarly situated individuals."). To satisfy this standard, Plaintiff's circumstances "must bear a reasonably close resemblance" to her comparators' alleged circumstances. *Hu*, 927 F.3d at 96, 97 ("A plaintiff can prevail by showing that she was similarly

situated in all material respects to the individuals with whom she seeks to compare herself." (citation and internal quotation marks omitted)). Plaintiff generally asserts that assaults against Asian Americans during 2020 were reported and prosecuted as hate crimes, whereas the alleged assault against her was not. (Compl. at 8-9.) Such generalized allegations, however, do not suffice to establish that Plaintiff's circumstances bore "a reasonably close resemblance" to assaults that were prosecuted. *Hu*, 927 F.3d at 96; *see also Iqbal*, 556 U.S. at 678 (a pleading that tenders "naked assertions" does not state a claim (alterations omitted)). Indeed, Plaintiff does not make any factual allegations about the circumstances of the assaults against members of the Asian American community beyond the allegation that they occurred, such as where or when the assaults took place; the severity of the assaults; or how quickly the police addressed the victims' complaints. (Compl. at 8-9.)

Nevertheless, construing Plaintiff's complaint liberally, her claim may not rest on the fact that she "was singled out as a target against whom the law was enforced,"—i.e., that she was subject to selective enforcement—but rather that the police allegedly refused to act on her complaint because she was a woman. *White*, 206 F. Supp. 3d at 931. For such "'traditional' equal protection claims," a plaintiff is not required to plead similarly situated comparators. *Id.*; *see Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (holding that Native American

8

plaintiffs did not need to establish "the disparate treatment of otherwise similarly situated non-Native American individuals" if plaintiffs established that "defendants discriminatorily refused to provide police protection because the plaintiffs [were] Native American"). In such cases, however, a plaintiff must still allege facts establishing that "discriminatory intent was a motivating factor" in a defendant's actions. *Okin*, 577 F.3d at 438.

Plaintiff alleges no such facts here, beside legal conclusions. *Drimal v. Tai*, 786 F.3d 219, 223 (2d. Cir. 2015) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted)). Indeed, the complaint's only allegation related to Plaintiff's sex is that the *passenger* made an offensive comment concerning her gender expression. (Compl. at 8.) This does not suffice to establish purposeful animus on behalf of the individual police officer defendants. *Naumovski v. Norris*, 934 F.3d 200, 216 n.50 (2d Cir. 2019) (to establish a sex-based equal protection violation, a plaintiff "must prove that she suffered purposeful or intentional discrimination on the basis of gender."). Accordingly, Plaintiff fails to state an equal protection claim against the individual defendants under § 1983.

Plaintiff also fails to state an equal protection claim against the City of New York. "To hold a municipality liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required

9

to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (alteration, internal quotation marks and citations omitted).  Plaintiff does not allege any facts establishing that the City has a policy or custom of discrimination based on sex in police reporting, and her § 1983 claims are dismissed.

### C. ADA Claims

Plaintiff also asserts claims against Officer John Doe and the City of New York under the ADA, alleging that Officer John Doe violated the ADA by preventing her from riding a bus with her service animal and that the City failed to adequately train Officers John and Jane Doe.  (Compl. at 7-8.)  Although she alleges a violation under Title I of the ADA, which solely relates to employment-based discrimination based on disability, the Court liberally construes Plaintiff's claim as arising under Title II, which concerns discrimination by public services.[3]

---

[3] The ADA has two different sections which relate to discrimination on public transit: Title II, Section 12182, which prohibits discrimination on publicly owned and operated transit services, and Title III, Section 12184, which prohibits discrimination on public transit services provided by private entities.  42 U.S.C. §§ 12182, 12184.  Plaintiff does not allege any facts establishing that the bus was operated by a private entity.  Accordingly, for purposes of this Memorandum and Order, the Court liberally construes her claims as arising under Title II of the ADA.

10

Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). To establish a claim under Title II, "a plaintiff must demonstrate (1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability." *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021) (citation and internal quotation marks omitted)).

"Only public entities are subject to Title II." *City & Cnty. of San Francisco, Cal. v. Sheehan*, 575 U.S. 600, 610 (2015). Accordingly, to the extent that Plaintiff asserts an ADA claim against Officer John Doe in his individual capacity, the claim is dismissed. *See also Blaylock v. Doe*, No. 14-CV-5363 (SJF), 2016 WL 1069073, at *5 (E.D.N.Y. Mar. 17, 2016) (noting that, under Title II, "individuals may not be sued in their individual or personal capacity"). To the extent that Plaintiff asserts an ADA claim against John Doe in his official capacity, the Court analyzes the claim concurrently with her claim against the City.

11

An individual has a disability under the ADA if she has "a physical or mental impairment that substantially limits one or more major life activities," or if she has a "record of such impairment."[4]  42 U.S.C. § 12102(1)(A), (B).  The complaint alleges that Plaintiff "suffers from PTSD with depression and anxiety" and that she experiences "panic attacks."  (Compl. at 7.)  Plaintiff does not allege, however, any details supporting how this impairment substantially limits any major life activities.  (*Id.*); *see Cain v. Mandl Coll. of Allied Health*, No. 14-cv-1729 (ER), 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017) ("Plaintiff fails to allege any specific facts connecting her symptoms to any limitation of her major life activities.").  Even at the pleading stage, therefore, Plaintiff's "failure to plausibly allege a substantial limitation to a major life activity precludes her from asserting that she has a record of disability."  *Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 394 (E.D.N.Y. 2016) (citation omitted).

However, under the more lenient standard set out in Congress' 2008 amendments to the ADA, a plaintiff may be "regarded as" having a disability if she "establishes that [s]he . . . has been subjected to an action prohibited [by the ADA] because of an actual or perceived

---

[4] Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12101(3)(A); *see also Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (discussing the 2008 amendment to the ADA). To state a claim under the "regarded as" prong, a plaintiff "need only establish that defendant regarded [her] as having a mental or physical impairment." *Rodriguez v. Verizon Telecom*, No. 13-CV-6969 (PKC), 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014). Although Plaintiff does not allege any facts establishing that Officer John Doe regarded her as having PTSD, the Court liberally construes the complaint to allege that his reference to her service animal establishes that she was "regarded as" having a disability.

Next, the Court must consider whether Plaintiff established that she was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity." *Tardif*, 991 F.3d at 404. District courts in the Second Circuit have found that it is "clear" that "the ADA can apply to police activity in some situations." *Reyes v. Galpin*, No. 18-CV-831 (JBA), 2019 WL 959680, at *8 (D. Conn. Feb. 27, 2019). "In the policing context, courts typically treat Title II claims under either the wrongful arrest or failure to reasonably accommodate umbrellas." *Felix v. City of New York*, 344 F. Supp. 3d 644, 663 (S.D.N.Y. 2018).

Neither of these scenarios apply here. First, Plaintiff does not allege that she was arrested. Second, for reasonable accommodation

13

claims, police officers "fail to reasonably accommodate [a plaintiff's] disability in the course of investigation or arrest, causing [him or her] to suffer greater injury or indignity in that process than other arrestees." *Bobbit v. Marzan*, No. 16-cv-2042 (AT), 2020 WL 5633000, at *16 (S.D.N.Y. Sept. 21, 2020). Such a claim "must be assessed in light of the totality of the circumstances of the particular case." *Williams v. City of New York*, 121 F. Supp. 3d 354, 365 (S.D.N.Y. 2015). Most reasonable accommodation claims against police officers relate to a failure to provide accommodations during an investigation or arrest. *See, e.g.*, *id.* (police officers failed to provide ASL interpreter during arrest); *Felix*, 344 F. Supp. 3d at 650 (police officers failed to account for suspect's paranoid schizophrenia when investigating suspect, leading to physical altercation); *Morales v. City of New York*, No. 13-CV-7667 (RJS), 2016 WL 4718189, at *1 (S.D.N.Y. Sept. 7, 2016) (wheelchair-bound plaintiff alleged that police mishandled his transport after arrest); *Reyes v. Town of Thomaston*, No. 18-CV-831 (JBA), 2020 WL 5849529, at *2 (D. Conn. Sept. 30, 2020) (police department had "no protocols or procedures regarding how to properly log information on addresses with persons who are mentally disturbed").

Here, however, Plaintiff does not allege that Officer John Doe failed to provide her with reasonable accommodation in his or the NYPD's "services, programs or activities," nor that she was "otherwise discriminated against" by Officer John Doe based on her disability.

14

*Tardif*, 991 F.3d at 404. Instead, she asserts only that Officer John Doe failed to *counter* the bus driver's alleged discrimination. (Compl. at 8.) While the Court does not excuse Officer John Doe's alleged failure to understand the law regarding service animals, his actions as alleged do not amount to a discrimination claim under the ADA. Further, although Plaintiff asserts that the City of New York failed to train Officers John and Jane Doe, she alleges no facts concerning police training on the ADA, or lack thereof. *See Reyes*, 2020 WL 5849529, at *4-5. Accordingly, Plaintiff has not plausibly alleged an ADA claim against the City or against Officer John Doe in his official capacity, and the ADA claim is dismissed.

### III. Leave to Amend

When a complaint falls short and is dismissed for failure to state a claim, the plaintiff should be given an opportunity to amend the complaint if a "liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted). Here, Plaintiff has not identified the type of bus she rode on July 17, 2020, and did not name the transit authority or private transit company as a defendant. With that information, in combination with additional factual allegations, Plaintiff may be able to allege a viable ADA claim against the municipal transit authority or the private entity operating the bus, based on the bus driver's alleged failure to let her board

15

with a service animal. Accordingly, and given Plaintiff's *pro se* status, the Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to amend her complaint regarding the ADA claim. *See* Fed. R. Civ. P. 15(a). The Court declines to grant leave to amend as to the Section 1983 claim because the Court concludes that doing so would be futile. As explained above, no factual allegations suggest that Plaintiff was discriminated against by Defendants based on her sex. *See, e.g.*, *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) ("Although district judges should . . . liberally permit *pro se* litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile.")

Should Plaintiff file an amended complaint, she must satisfy the minimal pleading requirements of Fed. R. Civ. P. 8, providing the defendant(s) with notice of the claim(s) and a short, plain statement of the relevant facts supporting her claim or claims. Plaintiff must provide facts pertinent to each claim and cannot rely on generalized or conclusory allegations of misconduct. If Plaintiff elects to file an amended complaint, she should label it as an "Amended Complaint" and forth specifically what injury each defendant did to cause her to suffer, when and how it occurred, and who was responsible for it. Conclusory allegations will not suffice to state a claim. *See Iqbal*, 556 U.S. at 678. Finally, Plaintiff must name the individuals who were

16

personally involved as defendants or provide detailed physical descriptions to assist with identifying them.

## CONCLUSION

For the reasons set forth above, the complaint is dismissed for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B). Plaintiff is granted thirty days from the date of this Memorandum and Order to file an amended complaint with respect to her ADA claims only. Plaintiff is advised that an amended complaint replaces her original complaint. If Plaintiff fails to file an amended complaint within the 30-day period or fails to cure the deficiencies identified in this Memorandum and Order, judgment shall enter dismissing this action with prejudice.

Plaintiff may wish to consult the City Bar Justice Center's Federal Pro Se Legal Assistance Project at (212) 382-4729 for free, limited-scope legal assistance.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to serve a copy of this Memorandum and Order on *pro se* Plaintiff and note service on the docket.

SO ORDERED.
December 9, 2022
Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge