UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------X

| | |
|---|---|
| Nickie Kane, | No. 22 Civ. 1339 (RER) (LB) |
| Plaintiff, | PLAINTIFFS OPPOSITION |
| v. | TO DEFEDANTS |
| The City of New York, New York City Transit, MTA Bus Company | MOTION TO DISMISS |
| Defendant(s). | |

-------------------------------------------X

Plaintiff, pro se, Nickie Kane hereby alleges for their opposition as follows:

1. The court should take the Defendants recitation of the facts stated in the complaint with a grain of salt. The Defendant has misconstrued the facts of this case. In paragraph three the Defendants state "Plaintiff has a dog "to help her with the symptoms of her disability," id. ¶ 8; see id. ¶ 11, although it is unknown how the dog provides her any such assistance or whether the dog received any training to do so." The mere fact that the Plaintiff states that her animal is a service animal means he is trained to assist its handler. The Americans with Disabilities Act does not require service animals to be professionally trained. This entire incident is as a result of the actions/inactions of the bus driver. The bus driver failed to ask the two questions and only two questions permitted by the Americans with Disabilities Act "ADA", NYS Human Rights Law, and NYC Human Rights. Is that a service animal? What is it trained to do? When the Plaintiff asked to have the driver contact her supervisor she refused. The Plaintiffs service animal is trained to help her get centered when her Post Traumatic Stress Disorder "PTSD" is triggered. The Plaintiff becomes dazed and confused, and unable to think clearly and goes into flight or flight mode. He also reminds her to take her medication. Assist her in getting out of bed when she is experiencing depression symptoms.

2. The Defendants agree that the Plaintiff filed a Notice of Claim with the NYC comptroller and a claim with MTA. The Defendants failed to state how the MTA operates under numerous names making it difficult to identify which name applied to the bus division. The Defendants also failed to acknowledge that this was during the middle of the pandemic where the then Governor Cuomo's ordered a "pause." As a result of this tolling for court fillings were also paused as per the Governors order.

3. The failure of the bus driver to ask the two questions permitted by the Americans with Disabilities Act, NYS Human Rights Law, and NYC Human Rights is enough to satisfy a violation of these laws. All that transpired after the driver failed to ask the permitted questions are additional violations. The driver was very clear as to why she wanted the Plaintiff to exit the bus and failed to ask the permitted questions under the Americans with Disabilities Act, NYS Human Rights Law, and NYC Human Rights Law. These laws are written with medical privacy in mind. A person with a disability does not have to advertise their disability. The Plaintiff did not have to walk onto the bus, state she had a disability, and announce that her dog was a service animal. It is up to the bus driver to ask the permitted questions to establish if the Plaintiff's dog was a service animal if she was unsure. Instead, she assumed the dog was not a service animal and ordered the Plaintiff off the bus.

4. It is clear that the bus driver's conduct towards the Plaintiff was due to her service animal. Her failure to verify that the animal was a service animal was enough to violate the laws. The Defendants falsely claim that another passenger argued with Plaintiff and brushed against her with a shopping cart. This other passenger used transphobic language and intentionally struck the Plaintiff with her shopping cart. This passenger's transphobic attitude probably was only expressed after the bus driver decided to park the bus and singled out the Plaintiff as the cause for the bus going out of service. The bus actually went out of service because the bus driver failed to verify if the Plaintiffs animal was a service animal by asking the permitted questions. Failed to contact her supervisor for guidance and provoked a hostile situation by parking the bus and refusing to drive.

5. The Plaintiff would not have been subjected to the treatment by the bus driver had it not been for her having her service animal with her on the bus. The Plaintiff stated in her complaint that she has Post Traumatic Stress Disorder "PTSD", anxiety, social anxiety, and depression. Conditions which she takes medication for and uses a service animal to aid with her symptoms. The Plaintiff doesn't have to create new language to describe her symptoms or how it limits her life activities. She can use the language used in the ADA. Despite the Defendants contentions.

6. The bus driver failed to ask the permitted questions to establish that the Plaintiff's service animal is a service animal. The driver refused to contact her supervisor for guidance. The driver created a hostile environment causing the Plaintiff to be assaulted. The drivers actions were in direct response to the Plaintiff's dog which is a service animal. The MTA is responsible for the bus drivers' conduct and failed to train and supervise her.

7. The defendant tries to convince this court that the Plaintiff would have to be in a complete vegetative state in order to be considered disabled under the ADA. This is completely false and should be rejected by the court. Disabilities are on a continuum from mental to physical and any combination in between. The Plaintiff is a person with a disability under the ADA and her animal is a service animal under the

ADA. The ADA also covers individuals who are discriminated against because they were perceived as disabled.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: April 2, 2024  
Brooklyn, NY

_____  
Nickie Kane, Plaintiff, *pro se*  
95-73 114th Street  
South Richmond Hill, NY 11419

786 440-8209

3